FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2018 JUL 26  P 12: 42

WILLIAM W. BLEVINS
CLERK



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

### INDICTMENT FOR FORCED LABOR, SEX TRAFFICKING BY FORCE, FRAUD OR COERCION, FORCED LABOR CONSPIRACY, FAIR HOUSING ACT VIOLATION, HATE CRIMES ACT, THEFT OF GOVERNMENT FUNDS, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 18-160 |
| v. | * | SECTION: SECT. J  MAG. 3 |
| RAYLAINE KNOPE | * | VIOLATIONS: 18 U.S.C. § 1594 |
| TERRY J. KNOPE, II |   | 18 U.S.C. § 1591 |
| JODY LAMBERT | * | 18 U.S.C. § 1589 |
| TAYLOR KNOPE |   | 42 U.S.C. § 3631 |
| | * | 18 U.S.C. § 249 |
| | | 18 U.S.C. § 641 |
| | * | 18 U.S.C. § 2 |

\*   \*   \*

The Grand Jury charges that:

### COUNT 1
(Forced Labor Conspiracy, 18 U.S.C. § 1594(b))

A.   **AT ALL TIMES MATERIAL HEREIN:**

#### The Defendants

1. Defendant **TERRY J. KNOPE, II (TERRY KNOPE)** was married to defendant **RAYLAINE KNOPE**.

2. Defendant **TERRY KNOPE** was the father of defendant **TAYLOR KNOPE**.

3. Defendant **RAYLAINE KNOPE** was the mother of defendant **JODY LAMBERT**.

4. Defendants, **TERRY KNOPE, RAYLAINE KNOPE, JODY LAMBERT,** and **TAYLOR KNOPE** ("the defendants") lived together on Rushing Lane in Amite, Louisiana ("the Rushing Lane property"), along with others known and unknown to the grand jury.

### The Victim

5. D.P. was an adult relative of defendant **RAYLAINE KNOPE** and lived with the defendants at the Rushing Lane property.

6. D.P. was diagnosed with disabilities, including autism, and was handicapped as that term is defined in Title 42, United States Code, Section 3602(h).

7. D.P. began living at the Rushing Lane property with the defendants in August 2015. Prior to that time, D.P. lived with the defendants and D.P.'s mother at a house in Kentwood, Louisiana, until D.P.'s mother passed away on August 12, 2015.

### D.P.'s Supplemental Security Income Program Benefits

8. The Social Security Administration ("SSA") is a government agency responsible for the management of the Social Security program as defined in the Social Security Act.

9. The Supplemental Security Income ("SSI") program is a Federal income supplement program designed to provide cash to aged, blind, and disabled people, who have little or no income, to meet those persons' basic needs for food, clothing, and shelter. The SSA operates the SSI program.

10. Beginning in or about 1997, D.P. became eligible for and began receiving SSI benefits due to D.P.'s disabilities.

11. On or about August 13, 2015, defendant **TERRY KNOPE** applied to be and became the representative payee for D.P.'s SSI benefits. As D.P.'s representative payee, **TERRY KNOPE** was required by the SSI program to spend all of the benefits he received on D.P.'s behalf only for D.P.'s living expenses.

12. From on or about August 13, 2015, until on or about June 30, 2016, **TERRY KNOPE** received approximately $8,796 in SSI benefits on D.P.'s behalf.

B.   **THE CONSPIRACY:**

Beginning on or about August 12, 2015, and continuing through on or about June 30, 2016, within the Eastern District of Louisiana and elsewhere, the defendants, **TERRY KNOPE, RAYLAINE KNOPE, JODY LAMBERT**, and **TAYLOR KNOPE**, knowingly conspired, combined, and agreed with each other, and with others known and unknown to the grand jury, to commit an offense against the United States, specifically a violation of 18 U.S.C. § 1589, in that the defendants knowingly conspired to provide and obtain the labor and services of D.P. by any one of, and by any combination of, the following means:

   (1) force, threats of force, physical restraint, and threats of physical restraint to D.P.;

   (2) serious harm and threats of serious harm to D.P.;

   (3) abuse and threatened abuse of law and legal process; and

   (4) any scheme, plan, and pattern intended to cause D.P. to believe that if D.P. did not
       perform such labor and services, D.P. would suffer serious harm and physical restraint;

all of which acts included kidnapping D.P., and an attempt to kidnap D.P., in violation of Title 18, United States Code, Section 1589(a) and (d).

C.   **MANNER AND MEANS OF THE CONSPIRACY**

It was a part of the plan and purpose of this conspiracy that defendants, **TERRY KNOPE, RAYLAINE KNOPE, JODY LAMBERT**, and **TAYLOR KNOPE,** together with others known and unknown to the grand jury, forced D.P. to perform household work and yard work for the family. The plan of the conspiracy was for the co-conspirators to subject D.P. to physical violence, threats of physical violence, psychological and verbal abuse, abuse of legal process, and psychological manipulation to obtain uncompensated labor and services from D.P. As the

3

conspiracy progressed, during the spring of 2016 and up until June 30, 2016, the defendants physically restrained D.P. by locking her in a backyard cage to maintain control over her and to prevent her from escaping.

### D. OVERT ACTS

In furtherance of this conspiracy and to effect the objects thereof, the defendants, **TERRY KNOPE, RAYLAINE KNOPE, JODY LAMBERT,** and **TAYLOR KNOPE,** committed the following overt acts, among others, in the Eastern District of Louisiana:

1. Throughout the time D.P. lived at the Rushing Lane property, the defendants required D.P. to complete housework and yard work in exchange for food and water. At **RAYLAINE KNOPE's** direction, D.P. was required to clean up the yard at the Rushing Lane property. Also at **RAYLAINE KNOPE's** direction, D.P. was often required to clean the bathroom in the mobile home, clean the mobile home's kitchen, and wash the defendants' dishes, among other tasks. D.P. was not paid for her work.

2. At the Rushing Lane property, although D.P. was initially permitted to sleep inside the defendants' mobile home on a mattress on the floor, **RAYLAINE KNOPE** soon thereafter ordered D.P. to sleep in a tent outside in the backyard.

3. **RAYLAINE KNOPE** obtained a lock for the tent's zippers and ordered **TAYLOR KNOPE** and others to lock D.P. into the tent at night so that D.P. could not escape.

4. **TAYLOR KNOPE** locked D.P. into the tent at night.

5. One night, after D.P. tried to escape from the tent and tried to leave the Rushing Lane property, **RAYLAINE KNOPE** threatened to kill D.P. if D.P. ever tried to escape again.

4

6. After D.P. tried to escape from the tent, the defendants moved D.P.'s tent to a backyard shed that could be secured from the outside with a padlock. **RAYLAINE KNOPE** ordered **JODY LAMBERT** to lock D.P. in the shed at night.

7. **JODY LAMBERT** locked D.P. into the shed at night.

8. In the spring of 2016, at **RAYLAINE KNOPE's** direction, **TERRY KNOPE** and **JODY LAMBERT**, with the help of others, built a cage for D.P. in the backyard of the Rushing Lane property. The cage consisted of an animal pen made out of chicken wire. A plastic tarp was placed over the top of the cage. **JODY LAMBERT** cut tree branches and placed them over the tarp to hide the cage from sight. The defendants put a tent inside the cage. The defendants also put a bucket in the cage to be used as a toilet.

9. Once the cage was complete, **RAYLAINE KNOPE** required D.P. to live in the cage.

10. **TAYLOR KNOPE**, at **RAYLAINE KNOPE's** direction, locked the cage from the outside with a padlock at night so that D.P. could not escape, and then unlocked the cage in the morning so that D.P. could complete work for the family.

11. In addition to her regularly assigned work, D.P. was forced to complete housework in a demeaning fashion, including one occasion when **TERRY KNOPE** forced D.P. to clean up a spill on the kitchen floor using D.P.'s tongue.

12. On another occasion, **RAYLAINE KNOPE** ordered D.P. to clean inside the trailer using a toothbrush.

13. On another occasion, **TERRY KNOPE** and **RAYLAINE KNOPE** required D.P. to cut the grass in the yard using scissors.

14. On another occasion, **TERRY KNOPE** forced D.P. to clean out the mobile home's septic system without any gloves, tools, or protective clothing.

15. Throughout the time D.P. lived at the Rushing Lane property, when D.P. did not complete her work to **RAYLAINE KNOPE's** liking, or if D.P. did not complete the assigned work quickly enough, **RAYLAINE KNOPE** denied D.P. food.

16. At **RAYLAINE KNOPE** and **TERRY KNOPE's** direction, when D.P. was given food, the food was of lesser quality than that eaten by the defendants and the rest of the residents at the Rushing Lane property.

17. The defendants physically assaulted D.P, causing D.P. physical injuries and pain, including one occasion where **TERRY KNOPE** intentionally smashed D.P.'s hand with a hammer, fracturing bones in D.P.'s hand.

18. The defendants routinely physically assaulted D.P, causing D.P. physical injuries and pain, including one occasion when **TERRY KNOPE** shot D.P. with a BB gun at close range because of her disabilities, causing BB pellets to strike D.P. and lodge under D.P.'s skin.

19. On another occasion, **TERRY KNOPE** burned D.P. with a lighter while another person known to the grand jury held D.P. in place so that D.P. could not escape.

20. On at least one other occasion, **RAYLAINE KNOPE** struck D.P. with her hand.

21. On at least one occasion, **RAYLAINE KNOPE** struck D.P. with a wooden paddle.

22. On at least one occasion, **JODY LAMBERT** punched D.P. in the face.

23. On one occasion, **TAYLOR KNOPE** struck D.P. in the head with a metal padlock.

24. On another occasion, **TAYLOR KNOPE** struck D.P. with a shower rod.

25. On at least one occasion, **TERRY KNOPE** punched D.P. in the head with his fist.

26. **JODY LAMBERT** and **RAYLAINE KNOPE** routinely threatened D.P. These threats included, among other things, threats to shoot D.P. if D.P. ever tried to escape

the Rushing Lane property, threats to beat D.P. if D.P. disobeyed the defendants' orders, and threats to kill D.P. if D.P. ever reported the defendants to law enforcement.

27. On one occasion, **JODY LAMBERT** held a handgun to D.P.'s head and threatened to shoot D.P. if D.P. did not obey his orders.

28. Throughout the time D.P. lived at the Rushing Lane property, each of the defendants routinely verbally and psychologically abused D.P. Each of the defendants regularly called D.P. "stupid," and "retarded," in reference to D.P.'s disability. On at least one occasion, **RAYLAINE KNOPE** said, in reference to D.P., "This retarded girl will do anything you say."

29. On one occasion, **RAYLAINE KNOPE** ordered D.P. to open an urn containing D.P.'s deceased mother's ashes, pour the ashes into a bowl, and eat the ashes with a spoon, as **RAYLAINE KNOPE, TERRY KNOPE, JODY LAMBERT,** and **TAYLOR KNOPE** stood nearby, watching and laughing.

30. On another occasion, despite knowing that D.P. had a fear of water, **TAYLOR KNOPE** held D.P.'s head underwater in the mobile home's bathtub as D.P. struggled to come up for air.

31. On another occasion, **TERRY KNOPE** held D.P. underwater in the hot tub in the backyard as D.P. struggled to come up for air.

32. As part of their plan to exert control over D.P., **RAYLAINE KNOPE** and **JODY LAMBERT** on several occasions ordered D.P. to remove her clothing and make sexual advances to men who came to the Rushing Lane property, including, among others, (1) a visitor who cut the grass, (2) a cable repairman, and (3) a family friend who came to the property for a barbeque.

33. Throughout the time D.P. lived at the Rushing Lane property, **RAYLAINE KNOPE** and **TERRY KNOPE** manipulated the legal process to advance the conspiracy by forcing D.P. to use methamphetamine and prescription painkillers, and then threatening to turn D.P. into the police for using drugs if D.P. did not obey the defendants' orders.

34. On or about August 13, 2015, **TERRY KNOPE** completed paperwork that gave him authority to receive D.P.'s federal SSI benefits in order to administer them on D.P.'s behalf. However, after completing this paperwork, **TERRY KNOPE** kept the money and refused to give D.P. use of or access to any of these benefits (which were D.P.'s only source of income), to prevent D.P. from being able to leave the Rushing Lane property.

35. **RAYLAINE KNOPE** took D.P.'s state-issued identification, cell phone, and laptop computer and did not allow D.P. to use or access these items, so as to prevent D.P. from escaping the family's control or contacting law enforcement.

All in violation of Title 18, United States Code, Section 1594(b).

<u>COUNT TWO</u><br>(Forced Labor, 18 U.S.C. §§ 1589(a), 2)

A. The allegations of Count 1, Sections A and D of this Indictment are realleged and incorporated by reference as though fully set forth herein.

B. Beginning on or about August 12, 2015, and continuing through on or about June 30, 2016, within the Eastern District of Louisiana and elsewhere, the defendants, **TERRY KNOPE, RAYLAINE KNOPE, JODY LAMBERT,** and **TAYLOR KNOPE**, did knowingly provide and obtain the labor and services of D.P. by any one of, and any combination of, the following means, which included kidnapping D.P. and an attempt to kidnap D.P.:

(1) force, threats of force, physical restraint, and threats of physical restraint to D.P.;

(2) serious harm and threats of serious harm to D.P.;

(3) abuse and threatened abuse of law and legal process; and

(4) any scheme, plan, and pattern intended to cause D.P. to believe that, if D.P. did not perform such labor and services, D.P. would suffer serious harm and physical restraint.

All in violation of Title 18, United States Code, Sections 1589(a) and (d), and 2.

## COUNT THREE
### (Attempted Sex Trafficking by Force, Fraud, and Coercion
### 18 U.S.C. §§ 1591(a)(1), 1594(a), 2)

A.  The allegations of Count 1, Sections A and D of this Indictment are realleged and incorporated by reference as though fully set forth herein.

B.  In or about June 2016, within the Eastern District of Louisiana and elsewhere, the defendants, **TERRY KNOPE** and **RAYLAINE KNOPE**, did knowingly, in and affecting interstate commerce, attempt to recruit, entice, transport, provide, obtain, advertise, and maintain D.P., knowing that means of force, threats of force, fraud, and coercion would be used to cause D.P. to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591(a)(1), 1594(a), and 2.

## COUNT FOUR
### (Interference with Housing Rights, 42 U.S.C. § 3631(a) & (b))

A.  The allegations of Count 1, Sections A and D of this Indictment are realleged and incorporated by reference as though fully set forth herein.

B.  Between on or about August 12, 2015, and on or about June 30, 2016, in the Eastern District of Louisiana and elsewhere, the defendants, **TERRY KNOPE, RAYLAINE KNOPE, JODY LAMBERT,** and **TAYLOR KNOPE**, while aiding and abetting each other and others known and unknown to the grand jury, did, by force and threat of force, willfully injure, intimidate and interfere with, and attempt to injure, intimidate, and interfere with, D.P., a

handicapped person as that term is defined in Title 42, United States Code, Section 3602, because of D.P.'s handicap and:

> (a) because D.P. was and had been renting and occupying a dwelling; specifically the Rushing Lane property, and
>
> (b) in order to intimidate D.P. from participating in the rental and occupation of a dwelling without discrimination on account of handicap; specifically, the defendants forced D.P. to live in a locked backyard cage to prevent D.P. from leaving the property and renting a home and occupying a dwelling elsewhere, where she would not be abused because of her disability;

all of which acts resulted in bodily injury to D.P.; included the use, attempted use, and threatened use of dangerous weapons and fire; and included acts of kidnapping.

All in violation of Title 42, United States Code, Section 3631(a) and (b), and Title 18, United States Code, Section 2.

## COUNT FIVE
### (Hate Crimes, 18 U.S.C. § 249(a)(2))

A. The allegations of Count 1, Sections A and D of this Indictment are realleged and incorporated by reference as though fully set forth herein.

B. Between on or about August 12, 2015, and on or about June 30, 2016, in the Eastern District of Louisiana, the defendant, **TERRY KNOPE**, because of D.P.'s actual and perceived disability, did willfully cause bodily injury to D.P., and did attempt to cause bodily injury to D.P. using a dangerous weapon (specifically, a B.B. gun) that traveled in interstate commerce, and otherwise affected interstate commerce.

All in violation of Tile 18, United States Code, Section 249(a)(2).

10

## COUNT SIX
### (Theft of Government Funds, 18 U.S.C. § 641)

A.  The allegations of Count 1, Sections A and D of this Indictment are realleged and incorporated by reference as though fully set forth herein.

B.  Beginning on or about August 13, 2015, and continuing until on or about June 30, 2016, in the Eastern District of Louisiana and elsewhere, the defendant, **TERRY KNOPE**, did knowingly and willfully embezzle, steal, purloin, and convert to his use, vouchers and money belonging to the United States and a department and agency thereof, namely, money of the Social Security Administration, to which he knew he was not entitled, when he received D.P.'s Supplemental Security Income benefits, totaling approximately $8,796, and used these funds for purposes other than to provide D.P. her basic living needs.

All in violation of Title 18, United States Code, Sections 641 and 2.

## NOTICE OF FORCED LABOR AND SEX TRAFFICKING FORFEITURE

1. The allegations of Counts 1 through 3 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 1594(d).

2. As a result of the offenses alleged in Counts 1 through 3, **TERRY KNOPE, RAYLAINE KNOPE, JODY LAMBERT,** and **TAYLOR KNOPE**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 1594(d), any and all property, real or personal, constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the said violations and any and all property, real or personal, used or intended to be used in any manner or part to commit or to facilitate the commission of the violations alleged in Counts 1 through 3 of this Indictment.

11

3. If any of the property subject to forfeiture pursuant to Paragraph 2 of this Notice of Forfeiture, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 1594(d).

## NOTICE OF FRAUD FORFEITURE

1. The allegations of Count 6 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 641 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

2. As a result of the offenses alleged in Count 6, defendant **TERRY KNOPE** shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 641.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL:

DUANE A. EVANS
UNITED STATES ATTORNEY

JULIA K. EVANS
ASSISTANT UNITED STATES ATTORNEY

RISA BERKOWER
NICHOLAS REDDICK
TRIAL ATTORNEYS
U.S. Department of Justice
Civil Rights Division

New Orleans, Louisiana
July 26, 2018

FORM OBD-34

No._____

UNITED STATES DISTRICT COURT

\_\_\_\_Eastern\_\_\_\_ *District of* \_\_\_\_Louisiana\_\_\_\_

_____Criminal_____ *Division*

THE UNITED STATES OF AMERICA

vs.

RAYLAINE KNOPE, TERRY J. KNOPE, II,
JODY LAMBERT, TAYLOR KNOPE

# INDICTMENT

INDICTMENT FOR FORCED LABOR, SEX TRAFFICKING BY FORCE, FRAUD OR COERCION, FORCED LABOR CONSPIRACY, FAIR HOUSING ACT VIOLATION, HATE CRIMES ACT, THEFT OF GOVERNMENT FUNDS, AND NOTICE OF FORFEITURE

VIOLATIONS: 18 U.S.C. §§ 1589(a), 1591, 1594(b), 249, 641 and 42 U.S.C. § 3631

*Filed in open court this* _____ *day of*
_____ *A.D. 2018.*

_____
*Clerk*

*Bail, $* _____

**Julia K. Evans, Assistant United States Attorney**